UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATTHEW MERZ,<br><br>Plaintiff,<br><br>v.<br><br>COWLITZ COUNTY, et al.,<br><br>Defendants. | Case No. 3:25-cv-05242-TLF<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendants Cowlitz County, Cowlitz County Sheriff's Department, Cowlitz County Jail, Brad Thurman, Troy Lee, Jason Hammer, and Marin Fox's (collectively, "defendants") Motion for Summary Judgment. Dkt. 35. The Doe defendants were dismissed on September 8, 2026. Dkt. 41.

The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 15. Considering each party's briefs, the record, and the applicable law, the Court GRANTS defendant's motion for summary judgment. Plaintiff Matthew Merz ("plaintiff") has not presented evidence sufficient to create a genuine dispute of material fact as to any of his claims and qualified immunity applies to the individual defendants.

## I. Factual Background

This case was removed from the Cowlitz County Superior Court based on 28 U.S.C. § 1441(a) and the Court's supplemental jurisdiction on March 20, 2025. Dkt. 1. Plaintiff, proceeding pro se, asserts claims under 42 U.S.C. §§ 1983, 1985, and 1986,

as well as various state-law claims, arising from events surrounding his January 2022 report to the Cowlitz County Sheriff's Office concerning alleged threats made by Christopher Jensen. Plaintiff alleges that Jensen had accused plaintiff of, among other things, "murdering numerous people, controlling government officials through stolen military technology, manipulating or erasing memories, and torturing Jensen with equipment used at Guantanamo Bay." Dkt. 40 at 7, Plaintiff's Response. Defendants contend that the Kalama Police Department had previously received an email on November 8, 2021, reporting that Jensen had been threatened by plaintiff and was fearful of plaintiff. Dkt. 40-2 at 11, Response to RFA 5.

The events giving rise to plaintiff's claims also include the investigation, interrogation, and arrest of plaintiff on March 8, 2022, for computer trespass in the first degree and electronic data theft, as well as an encounter between plaintiff and Jensen at the Cowlitz County Jail on March 9, 2022.

Plaintiff alleges that his arrest was unlawful and retaliatory. *See, e.g.*, Dkt. 40 at 19. Plaintiff was subsequently convicted of computer trespass in the first degree and electronic data theft. Dkt. 36, Declaration of John Justice, Ex. 1 (felony judgment and sentence). The Washington Court of Appeals affirmed his convictions, and the Washington Supreme Court denied review. *Id*. at Ex. 2 (Court of Appeals opinion affirming plaintiff's conviction) and Ex. 3. (Supreme Court denial of review of Court of Appeals Decision affirming plaintiff's conviction).

Plaintiff asserts eleven claims in his petition: (1) First Amendment Retaliation; (2) Due Process Violations (3) False Arrest and Unlawful Detention - Fourth Amendment; (4) Civil Conspiracy, 42 U.S.C. § 1985 (3); (5) Witness Intimidation and Obstruction; (6)

Failure to Intervene; (7) Monell liability; (8) Intentional Infliction of Emotional Distress; (9) Negligence; (10) Defamation; and (11) Neglect to Prevent Conspiracy. Dkt. 1-2 at 9-14.

## II. Plaintiff's Other Pending Motions

### A. Plaintiff's Motion for Leave to Amend (Dkt. 26)

Plaintiff filed a motion for leave to amend his complaint on July 6, 2026. Dkt. 26. Plaintiff argues the proposed amendments arise from the same factual events already at issue in this action and seeks to: (1) add Troy Brightbill as a defendant; (2) clarify that defendant Jason Hammer is sued in both his individual and official capacities; (3) remove the Doe defendants ("John and Jane Does 1-10"); (4) conform certain factual allegations to information obtained during discovery; and (5) remove the § 1985 and § 1986 counts while also adding a § 1983 civil-conspiracy claim and a Fourteenth Amendment pretrial detainee safety claim. Dkt. 26 at 2-3. The Court dismissed the Doe defendants. Dkt. 41. Because the Court grants defendants' motion for summary judgment, the remainder of plaintiff's motion for leave to amend is moot. Dkt. 26.

Furthermore, the scheduling order established December 1, 2025 as the deadline for amending pleadings and adding parties. Dkt. 19. Plaintiff filed the present motion seven months after the deadline, on July 6, 2026. Dkt. 26. When a party seeks to amend a pleading after the deadline established by a scheduling order, the party must first demonstrate good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4)(" A schedule may be modified only for good cause and with the judge's consent."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Plaintiff

failed to show good cause for the remaining requested amendments. *See generally* Dkts. 26, 27, 34.

The Motion for Leave to Amend is DENIED with prejudice. Dkt. 26. Accordingly, the Court will not address the claims in the amended complaint in this Order.

**B. Motion for Extension of Time to Complete Discovery (Dkt. 23) and Motion to Compel (Dkt. 24).**

Plaintiff filed a motion to compel and an extension requesting that the Court compel defendants to produce and supplement discovery regarding seventeen categories of information and records that plaintiff believes should exist or should be produced. Dkt. 23; Dkt. 24 at 5-7. Both motions are DENIED as MOOT because the Court grants summary judgment in favor of defendants.

Furthermore, although plaintiff attached correspondence with defense counsel and the discovery requests, along with defendants' responses, he has not provided any reference to which particular discovery requests defendants have allegedly failed to comply with. *See* Dkts. 25-1 to 25-6; Dkt. 30 (Reply). The answers themselves show that defendants have responded or objected to all of them. *See* Dkt. 24-6. As defendants note, signed discovery responses are certifications to the best of the person's knowledge, information, and belief formed after a reasonable inquiry. Dkt. 31 at 3 (citing Fed. R. Civ. P. 26(g)(1)(B)).

The Court "will not review each of Plaintiff's discovery requests and each of Defendants' responses in order to determine whether any of Defendants' responses are somehow deficient. Plaintiff has the burden of accurately identifying his requests and describing why Defendants' particular response is inadequate." *See Haynes v. Sisto*,

No. CIV-S-08-2177 SPG (PC), 2010 WL 4483486, at *1 (E.D. Cal. Nov. 1, 2010)("The court does not hold litigants proceeding pro se to the same standards that it holds lawyers. However, as the moving party, Plaintiff bears the burden of informing the court which discovery requests are the subject of his motion to compel, which of Defendants' responses are disputed, why he believes Defendants' responses are deficient, why Defendants' objections are not justified, and why the information he seeks through discovery is relevant to the prosecution of this action."); *see also Parker v. Soc'y for Creative Anachronism*, No. 3:23-CV-05069-RJB, 2024 WL 278944, at *2 (W.D. Wash. Jan. 25, 2024))("The Plaintiffs' motion to compel…should be denied on the merits. The Plaintiffs failed to point to any particular response that was objectionable…. It is not clear that the Defendant failed to answer or properly respond to any of the discovery propounded.").

**III. Summary Judgment Legal Standard**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The Court then views the facts in the light most

favorable to the nonmoving party and resolves any ambiguity in that party's favor. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

Ultimately, summary judgment is appropriate against a party who “fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000) (holding that the Celotex "showing" can be made by "pointing out through argument--the absence of evidence to support plaintiff's claim").

A pro se litigant’s pleadings must be read more liberally than pleadings drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant. *Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir.1986); *Pembrook v. Wilson,* 370 F.2d 37, 39–40 (9th Cir.1966). That said, “a pro se litigant is not excused from knowing the most basic pleading requirements.” *Am. Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1107–08 (9th Cir.2000) (citations omitted).

If a non-prisoner, pro se litigant submits a filing under penalty of perjury, courts must consider it as evidence. *See e.g.*, *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (courts should consider as evidence in opposition to summary judgment all of a pro se plaintiff's “contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the pro se plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.” (citations omitted)). Because

Mr. Merz's declaration in support of summary judgment is signed under penalty of perjury, the more liberal rule articulated in *Jones* will be applied. Dkt. 40-1 at 17.

## IV. Discussion

### A. Motion for Leave to File Surreply

Plaintiff has filed a notice of intent to file surreply and a surreply. Dkts. 44-45. Plaintiff's notice explains his intent to file a surreply requesting the Court strike or disregard defendants' reply because "(1) Defendants' newly raised argument that Plaintiff's custodial-negligence claim fails because Plaintiff did not present expert testimony establishing a correctional standard of care and (2) Defendants' newly raised factual assertion that Christopher Jensen requested the jail keep-separate concerning Plaintiff." Dkt. 44 at 1-2.

Pursuant to Local Rule 7(g), a party may file a surreply requesting that the Court strike materials contained in or attached to a reply brief. The surreply must be strictly limited to addressing the request to strike, the Court cannot consider any other extraneous arguments. LCR 7(g)(2). When new evidence is presented in a reply brief, the court should not consider the new evidence without giving the non-movant the opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996).

Plaintiff's motion does not identify any new facts or evidence that were allegedly improperly introduced in defendants' reply brief. Plaintiff brought the custodial negligence claim for the first time in his response Dkt. 40 at 25 (the "negligence claim also concerns Plaintiff's safety while in County custody."). Defendants merely respond with what the legal requirements are for such a claim. Dkt. 43 at 6-8. Also, defendants have contended since their initial discovery responses that that the Kalama Police

Department had previously received an email on November 8, 2021, reporting that Jensen had been threatened by plaintiff and was fearful of plaintiff. Dkt. 40-2 at 11, Response to RFA 5.

Accordingly, since there was no evidence or arguments raised for the first time in the reply brief, the Court will not consider plaintiff's surreply. Dkt. 45.

**B. Rule 56(d)**

Plaintiff argued for a continuance under Federal Rule of Civil Procedure Rule 56(d). To prevail on a Rule 56(d) request, a party must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emp'rs Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (citation omitted); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit [or declaration] the specific facts that further discovery would reveal and explain why those facts would preclude summary judgment."). Failure to comply with these requirements is a proper basis for denying relief. *Tatum,* 441 F.3d at 1101.

Plaintiff's request did not satisfy these requirements. He states: "That standard is met. Defendants admit underlying communications and events while corresponding records remain missing: Lee's contacts with his supervisor and the Prosecuting Attorney's Office; Thurman's contacts with Herrera and Commissioner Mortensen; Brightbill's supervisory role; and the jail keep separate and video while movement and audit records remain unresolved." Dkt. 40 at 5. Plaintiff also has a section entitled "Plaintiff's Specific Rule 56(d) Showing." Dkt. 40 at 35-37. He "recognizes the case's

legal limits: the convictions create serious barriers to false-arrest and conviction-dependent theories; Monell, defamation, and outrage remain demanding" and argues that "[t]hose issues should be decided on the correct claims and a materially complete record, not by converting missing discovery into a permanent judgment on every independent claim." Dkt. 40 at 38.

However, plaintiff does not provide reasons for the Court to find the requested evidence exists, or any reason as to why this information could not have been obtained sooner. The Court has denied his motion to compel discovery. The discovery deadline was July 20, 2026. Dkt. 19. A lack of diligence in conducting discovery is itself grounds for denying a Rule 56(d) request. *Panatronic USA v. AT&*T, 287 F.3d 840, 846 (9th Cir. 2002). Plaintiff has not established diligence or met any of the prerequisites for relief under Rule 56(d). Plaintiff does not show that the facts he thinks he can prove would create a genuine issue of material fact sufficient to defeat summary judgment. The Court therefore declines to stay this motion pending further discovery or offer any other relief under the Rule. Accordingly, plaintiff's Rule 56(d) request is denied.

**C. Plaintiff's Claims**

**1. First Amendment Retaliation**

The First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks omitted).

In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that “by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.” *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994). A plaintiff must establish a “causal connection” between the government defendant's “retaliatory animus” and the plaintiff's “subsequent injury.” *Hartman v. Moore*, 547 U.S. 250, 256 (2006). “Specifically, it must be a ‘but-for’ cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Nieves* 587 U.S. at 399 (citing *Hartman,* 547 U.S. at 260).

“A plaintiff alleging a retaliatory prosecution must show the absence of probable cause for the underlying criminal charge….[i]f there was probable cause, the case ends. *Lozman v. Riviera Beach*, 585 U.S. 87, 97 (2018) (citing *Hartman* 547 U.S. at 265-66 (2006)); *see also Nieves,* 587 U.S. at 406. (2019) (“It has long been ‘settled law’ that retaliatory prosecution requires proving ‘the want of probable cause’”).

“The lawfulness of a state arrest by state police is to be determined by state law so long as the state law is not inconsistent with the federal Constitution.” *Bergstralh v. Lowe,* 504 F.2d 1276, 1277 (9th Cir. 1974). The Supreme Court of Washington has held that “[a] conviction is strong evidence that there was enough of a case to persuade a jury of guilt beyond a reasonable doubt, and thus is evidence that there was, at the very least, probable cause to prosecute.” *Hanson v. City of Snohomish*, 852 P.2d 295, 298-99 (Wash.1993) (“We now expressly hold that a conviction, although later reversed, is conclusive evidence of probable cause, unless that conviction was obtained by fraud,

perjury or other corrupt means, or, of course, unless the ground for reversal was absence of probable cause."). The court also held that "[a]s with an action for malicious prosecution, probable cause is a complete defense to an action for false arrest and imprisonment." *Id*. at 564.

Plaintiff alleges that defendants "retaliated against Plaintiff for exercising his First Amendment rights by arresting, imprisoning, intimidating, endangering, and defaming Plaintiff" and that the charges plaintiff had against him of unlawfully accessing government records or electronic systems "was a pretense fabricated to justify said retaliation…." Dkt. 1-2 at 9. He "recognizes that probable cause presents a substantial obstacle to the retaliatory-arrest component of Count 1." Dkt 40 at 19.

The undisputed record establishes that plaintiff was convicted of computer trespass in the first degree and electronic data theft based on the conduct underlying his arrest, and that those convictions were affirmed on appeal. Dkt. 36, Exs. 1–3. Plaintiff does not identify evidence sufficient to permit a reasonable jury to conclude that defendants lacked probable cause for the conduct underlying his arrest or prosecution. Nor does he identify evidence that the criminal charges were initiated because of protected First Amendment activity rather than because of the conduct for which he was arrested and ultimately convicted.

Plaintiff requests that "[a]t minimum, the Court should analyze the distinct alleged adverse acts…. rather than collapse Count 1 into a retaliatory-arrest claim." Dkt. 40 at 21. "To the extent it rests on independent publication, intimidation, or custodial conduct that would not imply the invalidity of the convictions, those doctrines do not automatically resolve the claim." *Id*.

Here, plaintiff has not shown the requisite “but for” causation. *Nieves*, 587 U.S. at 399.

Plaintiff does not clarify what “independent publication” he refers to, but there is a press release attached to his response for motion for summary judgment that is a factual summary of the investigation. Dkt. 40-2 at 27-28. It is a Cowlitz County Sheriff’s Office Facebook press release dated March 8, 2022 that states:

> In January 2022, Mathew Merz, 42, Kalama, came to the Sheriff's Office to report what he believed to be official misconduct by the Kalama Mayor, Kalama Police Chief, and a fellow City Council member. Merz currently serves on the Kalama City Council. The allegations made by Merz, if proven, did not constitute criminal violations. While making this report, Merz implicated himself in unlawfully accessing the account of another city council member. Merz stated that he had accessed a fellow city council member's city email by “guessing" his account password. While accessing the account he printed off emails that the council member sent to the Police Chief and Kalama citizens. Merz provided copies of these emails to the Sheriff's Office.
> Intentionally gaining access to a computer system or electronic database of another without permission constitutes a violation of RCW 9A.90.040 Computer Trespass 1st Degree. Computer Trespass is a Class C Felony when the violation involves a computer or database maintained by a government agency. Accessing the account constitutes a violation of RCW 9A.90.100 Electronic Data Theft which includes intentionally, without authorization, and without reasonable grounds to believe he has authorization, obtained electronic data with the intent to wrongfully control or gain access to the data. Electronic Data Theft is a Class C Felony. Using the password constitutes a violation of RCW 9A.90.070 Spoofing by knowingly initiating the transmission of identifying information of another organization or person for the purpose of gaining unauthorized access to electronic data, a data system, or a data network with the intent to commit another crime. Spoofing is a Gross Misdemeanor. On March 8, 2022, Matthew Merz was arrested and booked into Cowlitz County Jail on charges of Computer Trespass (4 counts), Electronic Data Theft, and Spoofing (4 counts).

Dkt. 40-2 at 37. Plaintiff has not identified evidence from which a reasonable jury could conclude that publication of this factual account was undertaken because of plaintiff’s

protected speech. Nor has he identified evidence that the press release was false in a manner that would support a constitutional retaliation claim

The same is true of plaintiff's allegation concerning his encounter with Jensen at the jail. Although plaintiff does not clarify what custodial conduct he is referring to or any specific inferences of intimidation, defendants cite his encounter with Jensen. Dkt. 43 at 2-3. According to discovery responses, plaintiff and Jensen were not placed in a hallway together – a mental health officer removed Mr. Jensen from his housing area due to a mental health check-in, and as plaintiff was being escorted to court, he passed Jensen in the hallway. Dkt. 40-2 at 32, Answer to ROG 10. They were apparently "approximately three feet of each other for approximately one second." Dkt. 40-2 at 33, Answer to RFA 3. The video was reviewed, and it was determined that the incident was common practice, and that no policy violation had occurred. Dkt. 40-2 at 32, Answer to ROG 12. Plaintiff has not identified any evidence that the encounter was intentionally arranged as retaliation for protected speech or that any defendant acted with a retaliatory motive.

Viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find the required causal connection between protected First Amendment activity and the alleged adverse actions. Plaintiff therefore has not established a genuine dispute of material fact as to his First Amendment retaliation claim.

**2. Due Process Violations**

The Due Process Clause prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. State action that "shocks the conscience" violates the Due Process Clause's substantive

component. *Rochin v. California,* 342 U.S. 165, 172 (1952). State action that deprives a defendant of a fundamentally fair trial violates the Due Process Clause's procedural component. *Medina v. California,* 505 U.S. 437, 443 (1992) (internal quotation marks and alterations omitted).

Plaintiff argues that the defendants “deprived him of his procedural and substantive due process rights under the Fourteenth Amendment by arresting and detaining Plaintiff without lawful justification” and that he did not receive “adequate notice or opportunity to be heard prior to taking adverse actions, thereby violating Plaintiff’s due process rights.” Dkt. 1-2 at 9-10.

Taking all inferences in favor of the plaintiff, there is no evidence there was any action that “shocks the conscience” or that he was not given adequate procedural protections. The record establishes that plaintiff was arrested, prosecuted, represented by counsel, tried before a jury, and convicted of two felony offenses. *See, e.g.,* Dkt. 36, Ex. 1 at 3 (The defendant was found guilty of computer trespass in the first degree and electronic data theft based upon jury-verdict rendered March 17, 2023, and was represented by a lawyer). Plaintiff does not identify any procedural protection that he was denied in connection with those proceedings.

To recover damages under section 1983 for an unlawful or unconstitutional conviction, a plaintiff must prove that the conviction has been invalidated --- here plaintiff’s conviction was confirmed on appeal. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); Dkt. 26, Exs. 2-3.

Accordingly, plaintiff has not established a genuine dispute of material fact as to his due process claim.

**3. Fourth Amendment Violation – False Arrest and Unlawful Detention**

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause is a complete defense to both federal and state law claims of false arrest and false imprisonment. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest and imprisonment, Cabrera would have to demonstrate that there was no probable cause to arrest him.") (cited source omitted); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563-64 (1993) ("As with an action for malicious prosecution, probable cause is a complete defense to an action for false arrest and imprisonment.").

Plaintiff argues defendants arrested him without probable cause, depriving him "of his Fourth Amendment right to be free from unreasonable seizures" and that the "arrest was conducted without a valid warrant and lacked sufficient legal justification, constituting false arrest under both federal and state law." Dkt. 1-2 at 10.

The record does not support plaintiff's contention that the arrest lacked probable cause. Plaintiff was convicted of the offenses for which he was arrested, and the convictions were affirmed on appeal. Dkt. 36, Exs. 1-3. In addition, plaintiff has not made any arguments or presented evidence demonstrating that the officers lacked probable cause based on the facts known to them at the time of the arrest.

The Ninth Circuit has recognized that, where success on a false-arrest claim would necessarily imply the invalidity of an outstanding conviction, the claim may also be barred by *Heck*. *Zuegel v. Mountain View Police Dep't*, No. 21-16277, 2024 WL 1007500, at *1 (9th Cir. Mar. 8, 2024) ("Zuegel's false arrest claim is Heck-barred if

success on that claim would necessarily call into question his disorderly conduct conviction, even though his conviction was the result of his no contest plea.").

Here, plaintiff has not identified evidence that would permit such a claim to proceed without implicating the validity of his convictions. Plaintiff therefore has not established a genuine dispute of material fact concerning probable cause or otherwise demonstrated a viable Fourth Amendment false-arrest or unlawful detention claim.

**4. Civil Conspiracy (42 U.S.C. § 1985(3))**

To state a violation of § 1985(3), plaintiff must "allege and prove four elements": (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 828–29 (1983). The Supreme Court has interpreted the statute and held "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In the Ninth Circuit, the statute's protection extends beyond race only in limited circumstances involving classes entitled to special federal protection. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Plaintiff contends that "defendants conspired to deprive Plaintiff of his constitutional rights through wrongful arrest and intimidation tactics" and that the

conspiracy involved coordinated actions between the defendants and others to "suppress Plaintiff's speech and retaliate against him." Dkt. 1-2 at 10.

Plaintiff identifies no evidence that defendants acted because of plaintiff's membership in a protected class or with the discriminatory animus required by § 1985(3). Plaintiff acknowledges in his opposition that "[t]he § 1985(3) theory in particular faces the class based discriminatory-animus requirement recognized in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), which is not the factual basis of this case." Dkt. 40 at 37.

Nor is there an injury or deprivation on the part of plaintiff. A § 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Allegations identifying "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," and identifying "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of ... constitutional rights," have been held sufficiently particular to properly allege a conspiracy. *Harris v. Roderick,* 126 F.3d 1189, 1196 (9th Cir.1997).

Because plaintiff has not presented evidence establishing the essential elements of a § 1985(3) claim, defendants are entitled to summary judgment on this claim.

**5. Witness Intimidation & Obstruction of Justice (42 U.S.C. § 1985(2))**

Plaintiff claims that "defendants engaged in intimidation tactics" that included "placing plaintiff in danger by exposing him to a known threat," as well as "divulging confidential information in order to deter him from exposing misconduct." Dkt. 1-2 at 11.

Plaintiff does not meaningfully respond to defendants' arguments concerning this claim. *See* Dkt. 40 at 37 (Under a section entitled "CLAIMS PLAINTIFF DOES NOT NEED TO DEFEND IN THEIR PRESENT FORM," he cites this claim).

"Allegations of witness intimidation ... will not suffice for a cause of action [under section 1985] unless it can be shown the litigant was hampered in being able to present an effective case." *Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012) (quoting *David v. United States,* 820 F.2d 1038, 1040 (9th Cir.1987)).

Plaintiff has presented no evidence that any defendant prevented, impaired, or otherwise interfered with his ability to participate in the underlying criminal proceedings. The record establishes that plaintiff proceeded through those proceedings, was represented by counsel, received a jury trial, and obtained appellate review. Dkt. 36, Exs. 1-3. There was no evidence presented in the underlying criminal case, or here, that plaintiff was hampered by any act of any defendant in his criminal case. Accordingly, defendants are entitled to summary judgment on this claim.

**6. Failure to Intervene (42 U.S.C. § 1983)**

Plaintiff states that defendant "Jason Hammer and other officers had an affirmative duty to intervene but failed to prevent the wrongful arrest and retaliation against Plaintiff." Dkt. 1-2 at 11.

A failure-to-intervene claim requires an underlying constitutional violation. *See Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000). Because plaintiff has not established a constitutional violation, his derivative failure-to-intervene claim necessarily fails.

Plaintiff argues that defendant Hammer's discovery responses establish that Hammer had knowledge and an opportunity to intervene. Dkt. 40 at 29. He also contends that Hammer was present during material portions of the interview, knew of plaintiff's complaints concerning Kalama officials, and understood that he had a duty to intervene if another officer engaged in unconstitutional conduct. *Id*.

Even assuming those facts in plaintiff's favor, they do not establish an underlying constitutional violation. Plaintiff therefore cannot establish an essential element of his failure-to-intervene claim.

**7. Municipal Liability (Monell Claim) (42 U.S. § 1983)**

Municipalities, including counties, can only be liable under § 1983 if an unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).). To set forth a *Monell* claim against a municipality, "a plaintiff must show the defendant's employees or agents acted through an official custom, pattern, or policy permitting deliberate indifference to, or violating, the plaintiff's civil rights, or that the entity ratified the unlawful conduct." *Shearer v. Tacoma Sch. Dist. No*. 10, 942 F. Supp. 2d 1120, 1135 (W.D. Wash. 2013) (citing *Monell*, 446 U.S. at 690-91). Liability may also exist where there is a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which

policy can be attributed to a municipal policymaker. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

Municipal liability under 42 U.S.C. § 1983 is not established by the employment relationship between a municipality and its employees under a theory of respondeat superior. *Monell,* 436 U.S. at 694. As defendants note, any claim that plaintiff attempts to make regarding the actions of a county employee that departs from established constitutional policies does not give rise to a viable *Monell* claim. Dkt. 35 at 8 (citing *Ramirez v. County of Los Angeles*, 397 F. Supp. 2d 1208, 1214 (C.D. Cal. 2005)("[W]ith respect to the *Monell* claim against Los Angeles County, the motion [for summary judgment] is granted. Plaintiff has presented no evidence that Det. Bravo's actions reflect any custom, policy, practice or procedure of Los Angeles County, and, indeed, the record contains evidence that Det. Bravo's violation of established policies and practices of the Sheriff's Department contributed to the Constitutional deprivations alleged in this case."); *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 811 (S.D. Tex. 2011)("There is simply no evidence that the City somehow excused Smith from complying with its antidiscrimination policies. If anything, Plaintiff's arguments demonstrate that Smith failed to act in accordance with City policy, not that official City policy is itself to blame."))

Plaintiff simply states that "Defendant Cowlitz County, through its policymakers, maintained customs, policies, or practices that proximately and directly furthered the Constitutional violations suffered by Plaintiff and the "policies or customs include inadequate training and supervision of law enforcement officers" which led to the alleged violation of plaintiff's rights. Dkt. 1-2 at 12. Plaintiff argues that defendant

Thurman was a final policymaker for the Sheriff's Office and identifies, what in his opinion, are deficiencies concerning complaint procedures for handling complaints against law enforcement or elected officials, no unique policy or training for handling threats against elected officials, intervention policies, and internal investigations. Dkt. 40 at 27-28. Plaintiff also points to the Sheriff's Office press release as evidence of municipal involvement. *Id*.

Plaintiff's evidence does not establish a constitutional violation, however. That alone defeats his *Monell* claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (where there is no constitutional violation by an individual officer, there generally can be no municipal liability based on that conduct). In addition, plaintiff has not identified evidence establishing a specific County policy, custom, or practice that was the moving force behind a constitutional deprivation. His allegations concerning the absence of particular policies, training, or investigations are insufficient, without more, to establish that a County policy or deliberate failure to act caused a constitutional violation. Accordingly, defendants are entitled to summary judgment on plaintiff's *Monell* claim.

**8. Intentional Infliction of Emotional Distress**

To prevail on a claim for the tort of outrage,[1] the plaintiff must prove: (1) the defendant "engaged in extreme and outrageous conduct"; (2) the defendant "intentionally or recklessly inflicted emotional distress" on the plaintiff; and (3) "severe emotional distress" to the plaintiff "actually resulted." *Strong v. Terrell*, 147 Wn. App.

[1] The tort of "outrage" and the tort of "intentional infliction of emotional distress" are the same. *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1 (2003).

376, 385 (2008). Any claim for the tort of outrage requires behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel v. Bokor*, 149 Wn.2d 192, 196 (2003).

In making this determination, the court considers:

> (a) [T]he position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact; (c) whether defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and, (e) the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it.

*Birklid v. Boeing Co.*, 127 Wash.2d 853, 865 (1995) (quoting *Phillips v. Hardwick*, 29 Wash. App. 382, 388 (1981). Dismissal is appropriate where the court determines that reasonable minds could not differ on whether the conduct at issue was extreme or outrageous. *Dicomes v. State*, 113 Wn.2d 612, 630 (1989).

Plaintiff alleges that defendants "engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the likelihood of causing, severe emotional distress to Plaintiff." Dkt. 1-2 at 12. He cites to defendants' actions including "wrongful arrest, intimidation tactics, and defamatory statements" that "were beyond the bounds of decency and intolerable in a civilized society." *Id*. He states that he "does not contend that ordinary investigation, lawful arrest, prosecution, or a momentary hallway pass alone satisfies that standard." Dkt. 40 at 32. Plaintiff characterizes the alleged conduct cumulatively, including his attempts to report threats and suspected misconduct, communications with government officials, the investigation of his

allegations, the Sheriff's Office press release, and his brief encounter with Jensen at the jail. Dkt. 40 at 32–33.

Even viewing the evidence in plaintiff's favor, the record does not establish sufficiently extreme and outrageous conduct to support a claim for intentional infliction of emotional distress. Plaintiff has not identified evidence from which a reasonable jury could conclude that any defendant intentionally or recklessly engaged in conduct beyond all possible bounds of decency.

The evidence instead establishes that plaintiff was investigated and arrested after law enforcement received information concerning his access to another person's electronic account, that he was prosecuted and convicted of two felony offenses, and that his convictions were affirmed on appeal. Dkt. 36, Exs. 1–3. Accordingly, there is no genuine dispute of material facts and plaintiff has failed to establish the necessary elements for the tort of outrage (intentional infliction of emotional distress).

**9. Negligence**

Plaintiff argues that defendants owed him a "duty of care to ensure his safety, protect his constitutional rights, and enforce the law impartially" and that defendants breached "by failing to act on known threats to Plaintiff's safety, failing to properly investigate, and engaging in wrongful arrest or detention." Dkt. 1-2 at 12. In his opposition, he states that "Defendants correctly identify serious barriers to a free-standing Washington negligent-investigation theory." Dkt. 40 at 25. He also attempts to add a new claim and tries to clarify that the "negligence claim also concerns Plaintiff's safety while in County custody." *Id*.

To prevail on a negligence claim under Washington law, a plaintiff must establish: (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984). Under the public duty doctrine, to raise a claim for negligence against a governmental entity, a plaintiff must show that an alleged duty was owed to the individual claimant rather than the public at large. *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 754 (2013) ("Where the plaintiff claims the governmental entity has breached a duty owed to the public in general, he or she may not recover in tort for lack of an actionable legal duty."). A claim for negligent investigation against a police officer is not cognizable in Washington. *Laymon v. Dep't of Natural Res.*, 99 Wn. App. 518, 530, 994 P.2d 232 (2000); *Fondren v. Klickitat County*, 79 Wn.App. 850, 862, 905 P.2d 928 (1995). As defendants note, "law enforcement activities are not reachable in negligence." *Keates v. Vancouver*, 73 Wn. App. 257, 267 (1994) ("police officers owe no duty to use reasonable care to avoid inadvertent infliction of emotional distress on the subjects of criminal investigations."). Dkt. 35 at 11.

While a County may have a "'duty' to protect its citizens in a colloquial sense, but it does not have a legal duty to prevent every foreseeable injury." *Osborn v. Mason County*, 157 Wn.2d 18, 28 (2006). (citation omitted). [A]nd 'a broad general responsibility to the public at large rather than to individual members of the public' simply does not create a duty of care." *Id*. (*quoting Campbell v. City of Bellevue*, 85 Wn.2d 1, 9 (1975)).

Plaintiff has not identified evidence establishing the applicable standard of care, breach, or causation for the negligence theory pleaded in his complaint. Nor has he established that the public-duty doctrine imposed a duty of care.

To the extent plaintiff seeks to assert a new theory concerning negligence in the operation of the jail or failure to protect him from Jensen, that theory was not adequately pleaded in the complaint and cannot be added for the first time in opposition to summary judgment. See *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (finding that a district court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations"); *McNeely v. Cnty. of Sacramento*, 344 F. App'x 317, 319 (9th Cir. 2009) (finding § 1983 plaintiff could not raise a claim for the first time as argument in opposition to the defendant county's motion for summary judgment). Plaintiff's "correctional negligence" claim is not before the Court.

Even if the Court were to consider the claim, plaintiff, as the nonmoving party, had the burden to present evidence that raised a genuine issue of material fact as to an essential element of the claim. *Greenhalgh v. Dep't of Corr.,* 160 Wn.App. 706, 714 (2011). Here, petitioner does not raise an issue of material fact concerning a breach of any applicable standard of care because he did not present any expert testimony as to what constitutes "reasonable care." *Gordon v. Kitsap County*, 187 Wash. App. 1023, 2015 WL 2124383, at *3 (Wash. Ct. App. May 5, 2015) (nurse assaulted by an inmate was required to produce expert testimony to establish the appropriate standard of reasonable care needed for handling inmates because it was a specialized issue that involves interrelated issues of jail security, inmates' constitutional rights, and statutory

compliance); *see also Hall v. Kirkegard*, No. CV1400011HDLCJTJ, 2017 WL 8787176, at *14 (D. Mont. July 31, 2017), *report and recommendation adopted*, No. CV 14-11-H-DLC-JTJ, 2018 WL 747375 (D. Mont. Feb. 7, 2018), *aff'd*, 806 F. App'x 601 (9th Cir. 2020) (collecting cases of courts finding that expert testimony is required to prove negligence claims against correctional facilities/officials in failure to protect negligence cases).

Accordingly, plaintiff has failed to create a genuine dispute of material fact concerning his negligence claim.

**10. Defamation**

A plaintiff bringing a defamation action must prove "four essential elements: falsity, an unprivileged communication, fault, and damages." *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 55 (2002) (quoting *Mark v. Seattle Times,* 96 Wash.2d 473, 486 (1981), *cert. denied,* 457 U.S. 1124 (1982)). "[T]he plaintiff has the burden of establishing a prima facie case on all four elements," which "must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." *LaMon v. Butler*, 112 Wash. 2d 193, 197 (1989). "Liability for defamation requires that the defamation be communicated to someone other than the person defamed; in other words, there must be a 'publication' of the defamation." *Doe v. Gonzaga Univ.*, 143 Wn.2d 687, 701 (2001) (citation omitted).

"To establish the falsity element of defamation, the plaintiff must show the offensive statement was 'provably false.'" *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 157-58 (2010) (citation omitted). "[A] statement meets the provably false test to the extent it expresses or implies provable facts." *Id.* "One way a statement could be

provably false is when 'it falsely describes the act, condition or event that comprises its subject matter.'" *Id.* (citation omitted). To defeat a claim of defamation, the defendant "need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting', is true." *Woody v. Stapp*, 146 Wn. App. 16, 21 (2008) (quoting *Mark*, 96 Wn.2d at 494).

Law enforcement officers have a qualified privilege in releasing information to the press and public in the course of a criminal investigation. *Mark,* Wash. 2d 473 at 486-87. In order to provide an abuse of a qualified privilege, plaintiff must prove it "by evidence of convincing clarity," not simply by a preponderance of the evidence. *Id.* There must be proof of knowledge or reckless disregard for the falsity of the statement is necessary to establish abuse of a qualified privilege. *Id*. at 482.

Plaintiff alleges that defendants "made false and defamatory statements about Plaintiff, portraying him as a criminal without justification and alleged that he had reported nothing to the sheriff's office rising to the level of criminality" and that the "statements were made with knowledge of their falsity or reckless disregard for the truth." Dkt. 1-2 at 13.

The press release attached to plaintiff's opposition identifies the factual basis for plaintiff's claim. Dkt. 40-2 at 27–28. The release states that plaintiff reported alleged official misconduct and, during that report, disclosed that he had accessed another council member's city email account by guessing the account password. *Id*. It then described the applicable criminal statutes and the charges for which plaintiff was arrested. *Id*.

Plaintiff has not identified a specific statement in the press release that is provably false. Nor has he presented evidence sufficient to establish that defendants acted with knowledge of falsity or reckless disregard for the truth.

To the extent plaintiff challenges statements concerning his arrest and the criminal charges, the record establishes that plaintiff was in fact arrested and charged and was ultimately convicted of two of the offenses identified in the press release. Dkt. 36, Ex. 1. Plaintiff therefore has not established that the gist or substance of the challenged statements was false. Plaintiff also has not established an abuse of any applicable qualified privilege.

Accordingly, plaintiff has not presented sufficient evidence to create a genuine dispute of material fact concerning any element of his defamation claim.

**11. Neglect to Prevent Conspiracy (42 U.S.C. § 1986).**

It appears, under "CLAIMS PLAINTIFF DOES NOT NEED TO DEFEND IN THEIR PRESENT FORM," plaintiff has decided not to pursue his Section 1986 claim. Dkt. 40 at 27-38. He alleges in his complaint that the defendants had "knowledge of and the power to prevent the conspiracy to violate Plaintiff's rights but failed to take action." Dkt 1-2 at 13. He alleges the failure to prevent the alleged violation of his rights contributed to the harm he suffered "including wrongful arrest, defamation, and emotional distress." Dkt. 1-2.

The failure to establish any right to relief under 42 U.S.C. § 1985(3), however, precludes a cause of action based on 42 U.S.C. § 1986. *Uston v. Hilton Hotels Corp.,* 448 F. Supp. 116, 120 (D. Nev. 1978). Defendants are therefore entitled to summary judgment on plaintiff's § 1986 claim.

**D. Qualified Immunity**

Defendants assert that "[t]he individual defendants are also entitled to qualified immunity for plaintiff's civil rights claims." Dkt. 35 at 16.

42 U.S.C. § 1983 provides "a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985).

A government official is entitled to qualified immunity under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is "clearly established" when existing precedent places the "statutory or constitutional question beyond debate" such that every reasonable officer would understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) whether it would

be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

Here, plaintiff has not established a constitutional violation by any individual defendant. As discussed above, plaintiff has not presented evidence establishing retaliatory conduct, a due process violation, an unlawful arrest, or any other constitutional deprivation.

In addition, plaintiff has not identified precedent establishing that the particular conduct alleged here--including plaintiff's arrest based on the evidence underlying his criminal convictions, the publication of the Sheriff's Office press release, or plaintiff's brief encounter with Jensen while being escorted through the jail--violated a clearly established constitutional right.

Because plaintiff has failed to establish the first prong of the qualified-immunity analysis, and because he has not shown that the challenged conduct violated clearly established law, the individual defendants are entitled to qualified immunity on plaintiff's civil rights claims.

## V. Conclusion

Because plaintiff has identified no issues of material fact, defendants' Motion for Summary Judgment is GRANTED. Dkt. 35. Plaintiff's motion for extension of time to complete discovery (dkt. 23), motion to compel discovery and supplemental responses (dkt. 24), and motion for leave to amend (dkt. 26) are denied as MOOT.

Dated this 24th day of September, 2026.

Theresa L. Fricke
United States Magistrate Judge